1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    ADRIAN STEADMAN,                         CASE NO. C14-0854JLR

11                        Plaintiff,           ORDER GRANTING IN PART
                                               AND DENYING IN PART
12              v.                             SUMMARY JUDGMENT

13    GREEN TREE SERVICING, LLC,

14                        Defendant.

15                          **I.    INTRODUCTION**

16          This matter comes before the court on Defendant Green Tree Servicing, LLC's

17    ("Green Tree") motion for summary judgment.  (*See* Mot. (Dkt. # 24).)  This action arises

18    out of Green Tree's servicing of Plaintiff Adrian Steadman's loan.  Having considered

19    the submissions of the parties, the balance of the record, and the relevant law, and

20    deeming oral argument unnecessary, the court grants in part and denies in part the

21    motion.

22    //

ORDER- 1

## II.   BACKGROUND

In March 2003, Mr. Steadman obtained a loan for $190,000.00, which was secured by the property at 9015 171st Ave NE, Redmond, WA, 98052, and evidenced by a Note and  Deed of Trust.  (*See* Hamm Decl. (Dkt. # 25) Ex. 1 ("Note"), Ex. 2 ("Deed of Trust").)  This loan required Mr. Steadman to pay the noteholder monthly payments of $1109.79 for 30 years.  (*Id.*)  The servicing rights for the loan were eventually transferred to Bank of America, N.A. ("BoA").  (*See generally* Ford Decl. (Dkt. # 26) Ex. 2 at 67-82 ("Mod. Agreement").)

In 2010 and 2011, Mr. Steadman struggled to make payments on the loan.  (*See* Ford Decl. Ex. 2 at 45-49.)  Beginning early 2012, Mr. Steadman worked with BoA representative Eric Ngo to apply for a loan modification under the federal Home Affordable Modification Program ("HAMP").  (Ford Decl. Ex. 3 ("2d Steadman Dep.") at 13:1-14:21, Ex. 4 at 180-87 (1/17/12 email from Mr. Ngo requesting that Mr. Steadman provide documents necessary to apply for a loan modification), Ex. 2 at 50-53 (final HAMP application signed by Mr. Ngo and Mr. Steadman).)  At the time, Mr. Ngo's title was Assistant Vice President, Mortgage Service Specialist II, at BoA's downtown Seattle branch office.  (*See id.* at Ex. 4 at 180-87.)

In April 2012, BoA offered Mr. Steadman the opportunity to participate in a Trial Period Plan ("Trial Period") to determine whether Mr. Steadman was eligible under HAMP.  (*Id.* at 55-65 ("Trial Offer").)  The Trial Period consisted of three monthly modified payments of $732.86.  (*Id.*)  If Mr. Steadman successfully completed the

1  payments, BoA would send him a modification agreement offering new terms for his

2  loan.  (*Id.*)  BoA wrote to Mr. Steadman:

3  > Once you have successfully made each of the payments above by their due
>    dates, you have submitted two signed copies of your modification
4  >    agreement, and we have signed the modification agreement, your mortgage
>    will be permanently modified in accordance with the terms of your
5  >    modification agreement.

6  (*Id.*)

7  Mr. Steadman accepted the offer for a Trial Period and successfully completed the

8  Trial Period payments.  (Steadman Dep. at 92:10-14; Mod. Agreement.)  On August 18,

9  2012, BoA approved Mr. Steadman's application for a loan modification and sent him a

10  modification agreement.  (*Id.* ("Thank you for applying for a loan modification.  We are

11  pleased to inform you that you have been approved and your mortgage will soon be

12  permanently modified to provide you with an affordable monthly payment.").)  Among

13  other things, the modification agreement reduced Mr. Steadman's monthly payments to

14  $724.00.  (*Id.*)

15  BoA's offer letter stated:  "The enclosed Modification Agreement reflects the new

16  terms of your modified mortgage that will go into effect once you complete and return

17  the enclosed documentation."  (*Id.*)  BoA's offer letter included the following instructions

18  on how to accept the offer of modification:

19  **How to Accept This Offer:**

20  > To accept this modification offer, you must sign two copies of the
>    Modification Agreement and return both copies to use by 08/28/2012.
21  > Please sign and return both copies to us, using the enclosed pre-paid
>    envelope to mail the documents to:

22

ORDER- 3

1     Bank of America, N.A.
      11802 Ridge Parkway, Ste 100 HRM
2     HOME RETENTION
      Broomfield, CO 80021
3  (*Id.*)

4         Mr. Steadman did not comply with the acceptance instructions:  he did not sign

5  and mail two copies of the modification agreement to the specified address by August 28,

6  2012.  (Ford Decl. Ex. 1 ("Steadman Dep.") at 104:2-106:20.)  Instead, he signed the

7  modification agreement and delivered it to Mr. Ngo at the BoA Seattle office on August

8  27, 2012.[1]  (*Id.* at 105:2-7.)  Mr. Steadman claims that Mr. Ngo "told [him that he] could

9  submit the final loan modification documents by bringing them to his office in downtown

10 Seattle." (Steadman Decl. (Dkt. # 32) at 2.)  He claims that Mr. Ngo "informed [him]

11 that [his] actions were sufficient to accept the loan modification offer."  (*Id.*)  It was his

12 understanding that Mr. Ngo faxed the documents to the appropriate location.  (Steadman

13 Dep. at 105:17-22.)  It was also his understanding that Mr. Ngo would sign the final

14 modification paperwork on behalf of BoA.  (Steadman Decl. at 2.)

15 //

16 _____

17       [1] The parties dispute when Mr. Steadman signed and delivered the modification agreement.  Mr.
   Steadman testifies that he delivered the modification on August 27, 2012. (Steadman Dep. at 105:2-21.)
18 On reply, Green Tree provides a copy of the modification agreement apparently signed by Mr. Steadman
   on August 29, 2012.  (*See* Dkt. # 34 Ex. 2.)  New issues and evidence may not be raised in reply briefs.
19 *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.
   1996).  Accordingly, the court STRIKES the new evidence filed in support of Green Tree's reply brief.
20 *See Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 (9th Cir. 1993) (striking portions of a reply brief that
   presented new information); *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208,
21 1214 (W.D. Wash. 2003) (striking a declaration with new evidence submitted in reply).  Even if the court
   did consider Green Tree's new evidence the court is required to resolve all disputed facts in favor of the
   non-moving party on summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150
22 (2000).  Therefore, for purposes of this motion only, the court relies on Mr. Steadman's testimony that he
   delivered the modification agreement on August 27, 2012.

ORDER- 4

1    After delivering the signed modification agreement, Mr. Steadman began paying

2    the modified monthly loan payments to BoA.  (Steadman Decl. at 1-2.)  He submitted

3    timely payments in the amount of $724.00 from September 2012 through May 2012 by

4    calling BoA and paying over the phone.  (*Id.* at 2; Steadman Dep. at 116:11-16.)

5    On October 18, 2012, Mr. Steadman received a letter from BoA stating that it was

6    "no longer considering your request for a modification because . . . you notified us on

7    October 3, 2012, that you did not wish to accept the offer."  (Steadman Dep. at 113:19-

8    25; Ford Decl. Ex. 2 at 84-85.)  Mr. Steadman denies declining the offer.  (Steadman

9    Dep. at 113:25.)  On October 23, 2013, Mr. Steadman received another letter from BoA

10    stating that the payment it had recently received "was less than the total amount needed

11    to bring your loan up to date," and if BoA did not receive the total amount by the

12    specified acceleration date, "foreclosure proceedings may begin." (Steadman Dep. at

13    116:18-117:8; Ford Decl. Ex. 2 at 87-88.)

14    Mr. Steadman states that after he received these letters, he called and visited Mr.

15    Ngo and other BoA representatives multiple times to inquire as to the status of his

16    modification.  (Steadman Dep. at 113:13-117:11; Steadman Decl. at 2-3.)  Mr. Steadman

17    claims that the BoA representatives reassured him that his modification had been

18    approved, and he was only receiving the letters because their system was behind in

19    formally processing the approval.  (Steadman Dep. at 113:13-117:11; Steadman Decl. at

20    2-3.)  Mr. Steadman claims that the representatives advised him to keep making

21    payments on the loan, which he did.  (Steadman Dep. at 116:11-16.)  Nonetheless, on

22    May 15, 2013, BoA sent Mr. Steadman a letter informing him of his homeowner's rights

1   and stating, "If you do not respond within 30 days, a notice of default may be issued and

2   you may lose your home in foreclosure."  (Ford Decl. Ex. 2 at 95-96; Steadman Dep. at

3   135:16-25.)

4           On June 1, 2013, BoA transferred the servicing of Mr. Steadman's loan to Green

5   Tree.  (Ford Decl. Ex. 2 at 90-93 ("1st Transfer Letter"), 100-01 ("2d Transfer Letter").)

6   Green Tree's notice of the transfer stated that, according to its records, Mr. Steadman's

7   monthly payment was $1,165.08.  (2d Transfer Letter.)  Mr. Steadman attempted to make

8   a payment to Green Tree in June 2012, but was informed that Green Tree was unable to

9   locate his loan and "could not accept payments" on his account at that time.  (Steadman

10  Decl. at 3.)  It was September before Mr. Steadman was able to submit payments to

11  Green Tree.  (Steadman Decl. at 3.)  Mr. Steadman made payments in the modified

12  amount to Green Tree from September 2013 to December 2013.  (*Id.*)

13          In December 2013, Green Tree initiated foreclosure action against Mr. Steadman's

14  property.  (Ford Decl. Ex. 2 at 129, 134-36.)  Mr. Steadman received a notice of

15  foreclosure and a notice of a trustee's sale, which indicated that the amount outstanding

16  on his loan was over $20,000.00.  (Ford Decl. Ex. 2 at 138-39, 141-144.)  When Mr.

17  Steadman contacted Green Tree, he was informed that Green Tree did not have a copy of

18  the loan modification agreement.  (Steadman Decl. at 3.)  Mr. Steadman submitted his

19  copy of the modification agreement, but Green Tree would not accept it because it was

20  not signed by BoA.  (*Id.*; Steadman Dep. at 30:1-34:25.)  Mr. Steadman contacted Mr.

21  Ngo and other BoA representatives by phone and email and requested that they provide

22  him or Green Tree with a signed copy of the modification agreement.  (Steadman Decl. at

1   3.; Steadman Dep. at 30:1-34:25;Ford Decl. Ex. 4 at 191-197 (emails).)  BoA never

2   provided a signed modification agreement; the copies it did provide were missing the last

3   page that contained the place for a signature by a BoA representative.  (Steadman Decl. at

4   3; Ford Decl. Ex. 4 at 191-197; Steadman Dep. at 35:1-17.)  BoA also did not provide a

5   signed copy in response to Mr. Steadman's discovery requests.  (Steadman Dep. at 35:1-

6   17.)

7       Because Green Tree would not acknowledge his alleged loan modification, Mr.

8   Steadman filed this action.  (*See* Compl. (Dkt. # 1).)  Mr. Steadman brings claims against

9   Green Tree for breach of contract, breach of the implied duty of good faith and fair

10  dealing, negligence, violation of the Washington Consumer Protection Act ("CPA"),

11  RCW 19.86 *et seq*., and violation of the Washington Mortgage Loan Servicing Act

12  ("MLSA"), RCW 19.148.030.  (*See* Am. Compl. (DKt. # 29).)  Green Tree moves for

13  summary judgment on all claims.  Green Tree's motion is now before the court.

14                          **III.    ANALYSIS**

15  **A.    Summary Judgment Standard**

16      Federal Rule of Civil Procedure 56 permits a court to grant summary judgment

17  where the moving party demonstrates (1) the absence of a genuine issue of material fact

18  and (2) entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S.

19  317, 322 (1986); *see also Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The

20  moving party bears the initial burden of showing the absence of a genuine issue of

21  material fact.  *Celotex*, 477 U.S. at 323.

22  //

1    If the moving party does not bear the ultimate burden of persuasion at trial, it can

2    show the absence of an issue of material fact in two ways:  (1) by producing evidence

3    negating an essential element of the nonmoving party's case, or (2) by showing that the

4    nonmoving party lacks evidence of an essential element of its claim or defense.  *Nissan*

5    *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving

6    party meets its burden of production, the burden then shifts to the nonmoving party to

7    identify specific facts from which a factfinder could reasonably find in the nonmoving

8    party's favor.  *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

9    252 (1986).  In determining whether the factfinder could reasonably find in the

10   nonmoving party's favor, "the court must draw all reasonable inferences in favor of the

11   nonmoving party, and it may not make credibility determinations or weigh the evidence."

12   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

13   **B.    Proper Defendant**

14       Before turning to the merits of Mr. Steadman's claims, the court addresses the

15   parties' dispute over whether Green Tree is a proper defendant to Mr. Steadman's claims.

16   First, Mr. Steadman's assertion that Green Tree assumed BoA's liability in tort or under

17   consumer protection laws is meritless.  Ordinarily, an assignee does not become

18   vicariously liable for its predecessor's torts or breaches without an explicit contractual

19   agreement to assume such liability.  *See Lewis v. Boehm*, 89 Wash. App. 103, 107, 947

20   P.2d 1265, 1268 (1997) ("[T]he assignee of an executory contract is not liable on the

21   contract in the absence of an express assumption of the obligations contained therein.");

22   *see also Kucheynik v. Mort. Elec. Registration Sys., Inc.*, No. C10-451Z, 2010 WL

5174540, at *4 (W.D. Wash. Dec. 15, 2010) (disagreeing that "the mere assignment of contract, without more, automatically exposes the assignee to liability . . . for allegedly fraudulent conduct of the assignor" because "[u]nder Washington contract law, an assignment of contract does not impose on the assignee the liabilities of the assignor unless the assignee assumes those liabilities.").[2]  Mr. Steadman identifies no such contractual agreement by Green Tree.  And Mr. Steadman advances no other viable theory of successor liability.  *See Hall v. Armstrong Cork, Inc.*, 692 P.2d 787, 789-90 (Wash. 1984).  As such, Mr. Steadman may not hold Green Tree liable for prior improper acts by BoA.  To the extent Mr. Steadman's claims are predicated on such acts, rather than on Green Tree's acts, they are not viable.

Second, Green Tree's assertion that it is not the proper party to Mr. Steadman's claims for breach of contract and breach of the implied duty of good faith is mistaken.  Contrary to Green Tree's assertions, it is irrelevant that Green Tree was "not a party to

---

[2] *See also Johnson v. Fed. Home Loan Mort. Corp.*, No. C12-1712 TSZ, 2013 WL 308957, at *4 (W.D. Wash. Jan. 25, 2013) ("[An] assignee is liable for past breaches of the assignor only if he has expressly assumed any duties correlative with the right assigned, there being no implication of assumption by the mere assignment.") (internal quotation and alterations omitted); *Chavers v. GMAC Mort., LLC*, No. 2:11-CV-01097-ODW SS, 2012 WL 2343202, at *4 (C.D. Cal. June 20, 2012) ("Plaintiff has offered no authority, however, to support her position that a loan servicer, trustee, assignee, nominee beneficiary, or even a successor in interest can be liable vicariously for the actions of an originator."); *Au v. Republic State Mort. Co.*, No. CIV. 11-00251 JMS, 2012 WL 3113147, at *11 (D. Haw. July 31, 2012) ("[A]n assignee cannot be liable for unfair or deceptive acts that may have occurred when loan was consummated, and . . . liability for damages does not attach merely because one is an assignee") (internal alterations and quotations omitted); *Uy v. Wells Fargo Bank, N.A.*, No. CIV. 10-00204 ACK, 2011 WL 1235590, at *10 (D. Haw. Mar. 28, 2011) ("[C]laims of fraud and violations of consumer protection laws are inappropriate to assert against an assignee where there are no allegations that the assignee had any contact with the mortgagor or made any representations to the mortgagor and the factual basis for the claims occurred prior to assignment of the mortgage loan."); *U.S. v. Thompson and Georgeson, Inc.*, 346 F.2d 865, 869 (9th Cir. 1965) ("Merely as assignee one does not become affirmatively liable for a deficit in the accounts between his assignor and the other party to the assigned contract.  Any such liability would have to be based upon an affirmative assumption, by the assignee, of the obligations of his assignor on the contract, or upon some independent contractual arrangement.").

1   the alleged" loan modification agreement between Mr. Steadman and BoA.  (Reply (DKt.

2   # 33) at 8.)  BoA assigned to Green Tree "all beneficial interest under [Plaintiff's] Deed

3   of Trust . . . together with the note(s) and obligations therein described and the money

4   due and to become due thereon with interest and all rights accrued under said Deed of

5   Trust." (Box Decl. (Ex. 1) ("Assignment").)  To the extent BoA and Mr. Steadman had

6   previously contracted to modify the note's terms, those modified terms were what Green

7   Tree was assigned.  (*See* Mod. Agreement); *Morse Elec. Prod. Corp. v. Beneficial Indus.*

8   *Loan Co.,* 579 P.2d 1341, 1342 (Wash.1978) (holding that an assignee cannot acquire any

9   rights in excess of what the assignor has the ability to transfer); *Fed. Fin. Co. v. Gerard*,

10  90 949 P.2d 412, 417 (1998) ("Our courts have consistently held that an assignee's rights

11  are coextensive with those of the assignor at the time of assignment.").  And to the extent

12  Green Tree's actions subsequent to the assignment violate those modified terms, Green

13  Tree is a proper defendant to a claim for breach of contract.

14          Additionally, contrary to Green Tree's assertion, the fact that Freddie Mac owns

15  the underlying loan does not mean "there is no contract of any kind between Green Tree

16  and [Mr. Steadman]."  (*See* Reply at 8.)  Certain rights and obligations under that loan—

17  most pertinently, the rights to collect Mr. Steadman's monthly payments and, in the event

18  of default, to accelerate the loan and initiate foreclosure on Mr. Steadman's property,

19  as—have been assigned to Green Tree.  (*See* Assignment; Box Decl. Ex. 2 (declaration

20  by Green Tree under penalty of perjury that it holds the promissory note evidencing Mr.

21  Steadman's loan).)  As such, Mr. Steadman is contractually obligated to make monthly

22  payments to Green Tree—and Green Tree is contractually obligated to collect those

ORDER- 10

1  payments—in accordance with the terms of the Note and Deed of Trust.  (*See* Note ¶ 6

2  (requiring Mr. Steadman to remit monthly payments to the note holder and authorizing

3  the note holder to accelerate the amount due if a payment is missed), ¶ 8 (obligating Mr.

4  Steadman to "keep all of the promises made in this Note"), ¶ 10; Deed of Trust ¶ 22

5  (permitting the lender to foreclose in the event of a default); (Ford Decl. Ex. 2 at 104-05

6  (notice of default identifying Green Tree as the "creditor" and stating that, if Mr.

7  Steadman failed to cure his default, the "creditor" could exercise remedies due under the

8  loan agreement, including foreclosure).)  Green Tree—not BoA or Freddie Mac—is the

9  entity that allegedly foreclosed on Mr. Steadman's property in violation of the modified

10  loan terms.  Green Tree—not BoA or Freddie Mac—has allegedly violated the servicing

11  obligations as set forth in the Note and Deed of Trust.  Because Mr. Steadman is suing

12  Green Tree for violations of Green Tree's servicing obligations as set forth under the

13  Note and Deed of Trust, Green Tree is a proper defendant to Mr. Steadman's breach of

14  contract and duty of good faith claims.

15  **C.     Breach of Contract**

16         Mr. Steadman contends that he entered into a loan modification agreement with

17  BoA before his loan was assigned to Green Tree, and that Green Tree's subsequent

18  initiation of foreclosure proceedings violated the modified terms of his loan.  Green Tree

19  raises two arguments in response:  (1) no valid modification agreement exists because

20  Mr. Steadman cannot prove that he accepted BoA's offer, and (2) the alleged

21  modification agreement is barred by the Statute of Frauds.

22  //

ORDER- 11

**1.  Acceptance**

A valid contract requires an offer, acceptance and consideration. *See Yakima Cnty. Fire Protection Dist. No. 12 (West Valley) v. Yakima,* 858 P.2d 245 (Wash. 1993). Acceptance of an offer must be identical to the offer or no contract is formed.  *Sea-Van Invs. Assocs. v. Hamilton,* 881 P.2d 1035 (Wash. 1994).  Therefore, where the offeror specifies the manner of acceptance, no contract is formed if the specification is not followed.  *See Nw Props. Agency, Inc., v. McGhee,* 462 P.2d 249, 253 (1969); *Corbit v. J. I. Case Co.,* 424 P.2d 290, 299 (Wash. 1967) (finding no contract formation because the "offer clearly specifie[d] the time and manner in which acceptance . . . was to be consummated" and the offeree had not complied with the specifications); *Johnson v. Safeco Ins. Co. of Am.,* 316 P.3d 1054, 1060 (2013) (finding no contract formation because the plaintiff's putative acceptance did not meet the plain language of the offer's requirements).  Ordinarily, whether there was mutual assent to the terms of an offer is a question of fact for the jury. *Keystone Land & Dev. Co. v. Xerox Corp.,* 94 P.3d 945, 949 (Wash. 2004).

Here, there is no dispute that Mr. Steadman did not comply with BoA's specified manner of acceptance.  (Steadman Dep. at 104:2-106:20.)  Ordinarily, this failure would prevent formation of a contract.  *See Corbit,* 424 P.2d at 299.  Mr. Steadman, however, claims that Mr. Ngo waived the specified requirements when he told Mr. Steadman he "could submit the final loan modification documents by bringing them to [Mr. Ngo's]

//

//

1   office in downtown Seattle" and "informed [Mr. Steadman] that [his] actions were

2   sufficient to accept the loan modification offer."[3]   (Steadman Decl. at 2.)

3        An agent can bind his or her principal to a contract when the agent has either

4   actual or apparent authority.  *King v. Riveland*, 886 P.2d 160, 165 (Wash. 1994).  "Both

5   actual and apparent authority depend upon objective manifestations made by the

6   principal."  *Id.*  "With actual authority, the principal's objective manifestations are made

7   to the agent; with apparent authority, they are made to a third person."  *Id.*  "Such

8   _____

9        [3] Green Tree moves to strike Mr. Steadman's testimony about Mr. Ngo's statements as hearsay.
    (*See* Reply at 2.)  However, in general, "out-of-court statements that are offered as evidence of legally

10   operative verbal conduct are not hearsay."  *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004).
    Because such statements have independent legal significance, they are considered "verbal acts," and are
    exempted from the definition of hearsay.  *Id.*; *see also Viall v. Scott*, 943 F.2d 56 (9th Cir. 1991).

11   Specifically, "proof of oral utterances by the parties in a contract suit constituting the offer and
    acceptance which brought the contract into being, are not evidence of assertions offered testimonially but
    rather of utterances verbal conduct to which the law attaches duties and liabilities." *N.L.R.B. v. H. Koch &*

12   *Sons*, 578 F.2d 1287, 1290-91 (9th Cir. 1978); *see also United States v. Rubier*, 651 F.2d 628, 630 (9th
    Cir. 1981) ("Facts of independent legal significance constituting a contract which is at issue are not

13   hearsay.")  Accordingly, the Ninth Circuit held that testimony that a third party accepted a contract during
    an out-of-court telephone conversation was not hearsay because it was not introduced to prove the truth of
    the third party's assertion, but rather "only to show that [the third party] uttered words of assent,

14   regardless of their 'truth.'"  *H. Koch & Sons*, 578 F.2d at 1290-91.  The Ninth Circuit reasoned that "the
    truth of [the third party's] words was completely irrelevant, for to lead a person reasonably to suppose

15   that you assent to an oral agreement is to assent to it, contrary intentions notwithstanding."  *Id.* (internal
    quotations and alterations omitted); *see also Calif. Trucking Ass'n v. Bhd. of Teamsters & Auto Truck*

16   *Drivers, Local 70*, 679 F.2d 1275, 1291 (9th Cir. 1981) ("The out-of-court statement of the [company]
    representative was not offered for the truth of the matter asserted; rather, the statement had an operative
    effect in the nature of a contract rejection wholly apart from the truth of the assertion.").

17        Similarly, here, Mr. Ngo's out-of-court statements are not introduced for their "truth," but rather
    to show that Mr. Ngo uttered legally operative words that brought a contract into being.  *See H. Koch &*

18   *Sons*, 578 F.2d at 1290-91.  Because Mr. Ngo's representation that Mr. Steadman could tender acceptance
    in a different manner effectively modified or re-stated BoA's offer to Mr. Steadman, they are utterances

19   of verbal conduct.  *See id.*  The truth of the words is irrelevant, for to lead Mr. Steadman to supposed that
    BoA assented to his different form of acceptance was to assent to it, contrary intentions (or mistaken
    impressions) notwithstanding.  *See id.*  As such, Mr. Ngo's statements are not hearsay.  Therefore, the

20   court denies Green Tree's motion to strike.  *See Adair v. Safeco Ins. Co.*, No. CV-09-31-BU-SEH-RKS,
    2010 WL 2079542, at *4 (D. Mont. May 24, 2010) ("Evidence of the alleged statement is evidence of a

21   verbal act, an utterance that is itself an operative fact giving rise to legal consequences. The statement is
    admitted to show that it actually occurred, not for the truth of the statement's contents.").  In so ruling, the

22   court does not pass on Mr. Ngo's actual or apparent authority to make such representations, or the extent
    to which the statements bind BoA.  *See id.*

manifestations will support a finding of apparent authority only if they have two effects."
*Id.* "First, they must cause the one claiming apparent authority to actually, or
subjectively, believe that the agent has authority to act for the principal." *Id.* "Second,
they must be such that the claimant's actual, subjective belief is objectively reasonable."[4]
*Id.*

The court finds that a genuine issue of material fact exists as to whether BoA
made objective manifestations that caused Mr. Steadman to subjectively and reasonably
believe that Mr. Ngo had authority to either modify BoA's specified terms of acceptance
or to accept the modification agreement on BoA's behalf.  One of the ways in which a
principal can cloak a person in apparent authority is "by appointing a person to a position,
such as that of manager or treasurer, which carries with it generally recognized duties; to
those who know of the appointment there is apparent authority to do the things ordinarily
entrusted to one occupying such a position."  *King*, 886 P.2d at 165.  BoA appointed Mr.
Ngo to the position of Assistant Vice President, Mortgage Specialist II.  (*See* Ford Decl.
Ex. 4 at 180-87.)  When Mr. Steadman requested to participate in a loan modification
program, Wells Fargo assigned Mr. Ngo to assist him. (2d Steadman Dep. at 13:8-16.)
Mr. Ngo was Mr. Steadman's "main contact person" with respect to his loan
modification.  (2d Steadman Dep. at 31:14-16.)

---

[4] "Actual authority may be express or implied."  *King*, 886 P.2d at 165.  "Implied authority is actual authority, circumstantially proved, which the principal is deemed to have actually intended the agent to possess."  *Id.*  For example, "[a]uthority to perform particular services for a principal carries with it the implied authority to perform the usual and necessary acts essential to carry out the authorized services."  *Id.*  Because, at this stage, Mr. Steadman does not advance any facts or argument supporting a finding of actual authority, the court does not address that theory in this order.

ORDER- 14

1    "One dealing in good faith with an agent who appears to be acting within the

2    scope of his authority is not bound by undisclosed limitations on the agent's power."

3    *King*, 886 P.2d at 165.  Mr. Ngo met with Mr. Steadman and helped Mr. Steadman

4    submit a HAMP application with proper documentation.  (Steadman Decl. at 2; Steadman

5    Dep. at 82:4-83:4; 2d Steadman Dep. at 13:1-14:21; Ford Decl. Ex. 4 at 180-87 (email

6    from Mr. Ngo arranging a meeting with Mr. Steadman and instructing him which

7    documents to bring), Ex. 2 at 50-53 (final HAMP application signed by Mr. Ngo and Mr.

8    Steadman).)  When Mr. Steadman contacted Mr. Ngo regarding how to deliver his

9    acceptance and Mr. Ngo told him to bring the documents to his office, it could have

10   reasonably appeared to Mr. Steadman that Mr. Ngo was acting within the scope of his

11   authority.

12       Mr. Steadman testifies that he subjectively believed Mr. Ngo had the authority to

13   act on behalf of BoA.  (Steadman Decl. at 2-3; Steadman Dep. at 105:1-25.)  And a jury

14   viewing these facts in the light most favorable to Mr. Steadman, *Reeves*, 530 U.S. at 150,

15   could reasonably find that Mr. Steadman's belief was objectively reasonable.  *See King*,

16   886 P.2d at 165.  As such, summary judgment on the questions of acceptance and

17   contract formation is inappropriate.  *See Keystone Land*, 94 P.3d at 949.

18   **2.  Statute of Frauds**

19       Agreements that "by their terms are not to be performed in one year" fall within

20   the statute of frauds.  RCW 19.36.010.  So do contracts creating or evidencing any

21   encumbrance on real estate.  RCW 64.04.010; RCW 64.04.020.  Under the statute of

22   frauds, such contracts are unenforceable unless they are set forth in writing and signed by

1    the party to be bound.  *Family Med. Bldg., Inc. v. State, Dep't of Soc. & Health Servs.*,

2    702 P.2d 459, 461 (Wash. 1985); RCW 19.36.010; RCW 64.04.010; RCW 64.04.020.

3    Full performance by one party removes the case from the operation of the statute.  *Becker*

4    *v. Lagerquist Bros.*, 348 P.2d 423, 430 (Wash. 1960).  With respect to contracts regarding

5    real property, sufficient part performance can remove the agreement from the statute of

6    frauds.  *Berg v. Ting*, 886 P.2d 564, 571 (Wash. 1995).  However, the doctrine of part

7    performance does not apply to contracts that by their terms are not to be performed in one

8    year.  *Trethewey v. Bancroft-Whitney Co.*, 534 P.2d 1382, 1386 (Wash. 1975) ("[W]here

9    the statute is directed solely to the time of performance and not to the character or

10   subject-matter of the contract, part performance could not remove the ban of the statute

11   without in effect repealing the statute.")

12       In the same vein, modifications of contracts falling within the statute of frauds

13   must also be made in writing and signed by the party against whom enforcement is

14   sought.  *Anderson v. Anderson*, 223 P. 323, 324 (Wash. 1924).  However, contract

15   modifications that have been executed, as well as executory modifications that have been

16   sufficiently partially performed, are exempt.  *Id.*; *see also Consol. Elec. Distribs., Inc. v.*

17   *Gier*, 602 P.2d 1206, 1210 (Wash. 1979); *Oregon & W. R. Co. v. Elliott Bay Mill &*

18   *Lumber Co.*, 126 P. 406, 407 (Wash. 1912) (finding that an oral agreement between a

19   lessee and a sublessee to modify the terms of the lease was valid because it was partially

20   performed).

21   //

22   //

ORDER- 16

1    Here, it is undisputed that Mr. Steadman is unable to supply a copy of the

2    modification agreement signed by BoA.[5]  (*See* Steadman Dep. at 35:1-17.)  As a result,

3    the statute of frauds would ordinarily render the alleged modification of Mr. Steadman's

4    loan unenforceable.  However, after examining the controlling law, the court concludes

5    that, in this situation, there is a question of fact as to whether Green Tree is estopped

6    from asserting the statute of frauds as a defense.

7        The statute of frauds applies for two reasons.  To begin, it appears at first glance

8    that Mr. Steadman's loan, by its terms, is not to be performed within one year.  *See* RCW

9    19.36.010; *Turning Point Cmty. Church of God in Christ v. Lee*, 152 Wash. App. 1014, at

10   *3-4 (2009).[6]  After all, the loan binds Mr. Steadman to make monthly payments to the

11   lender over the course of 30 years.  (*See* Note); *Lectus, Inc. v. Rainier Nat. Bank*, 647

12   P.2d 1001, 1003 (Wash. 1982) (finding that a contract calling for monthly payments over

13   a period of five years was within the statute of frauds).  Because the doctrine of part

14   performance is inapplicable to contracts of this type, *Trethewey*, 534 P.2d at 1386, and

15

16   _____

17       [5] The court notes that the absence of a Modification Agreement signed by BoA does not rule out
     a finding of a valid contract.  *See Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 162 P.3d 1153,

18   1165-66 (Wash. Ct. App. 2007) (finding that signatures of the parties were not essential to a finding of
     mutual assent to enter into a contract); *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 883 (9th Cir.
     2013), *as amended on reh'g in part* (Sept. 23, 2013) (disagreeing with a bank's argument that, even upon

19   successful completion of a Trial Period, there could be no loan modification contract unless and until the
     bank sent the borrower a signed copy of the Modification Agreement because  the bank's position "made

20   the existence of any obligation conditional solely on action of the bank" and "allowed banks to avoid their
     obligations to borrowers merely by choosing not to send a signed Modification Agreement, even though
     the borrowers made both accurate representations and the required payments").

21
         [6] See *Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 (9th Cir. 2003) (stating

22   that federal courts "may consider unpublished state decisions, even though such opinions have no
     precedential value").

1  Mr. Steadman does not provide an agreement signed by BoA, the alleged oral

2  modification would ordinarily be unenforceable.

3      Upon further examination, however, the outcome is less clear-cut.  In Washington,

4  the test for applying the statute of frauds is whether a contract "*cannot* be performed

5  within one year from its making." *Winslow v. Mell*, 295 P.2d 319, 322 (Wash. 1956)

6  (emphasis added).  Courts "will examine the surrounding circumstances to ascertain the

7  terms of the contract and to determine whether, by those terms, the contract must of

8  necessity require more than one year to perform."  *Id.*; *see also Gronvold v. Whaley*, 237

9  P.2d 1026, 1030 (Wash. 1951) ("We merely look[] to the circumstances to ascertain

10 whether the events required by the terms of the contract could not possibly take place

11 within a year."). "That the contract was not performed within a year is of no significance;

12 nor does it matter that it was highly improbable that the contract could be performed

13 within one year."  *Gronvold*, 237 P.2d at 1030.

14     Here, Mr. Steadman's loan permits him to prepay the amount due.  (*See* Note

15 ¶ 4.)  As such, it may be possible, albeit improbable, that the contract could be performed

16 within one year.  *See Wells Fargo Bank v. Main*, 160 Wash. App. 1005, at *3 (2011)

17 (finding that a loan for $103,000.00 was exempt from the statute of frauds because it was

18 possible, no matter how improbable, that it could be paid back within one year);

19 *Gronvold*, 237 P.2d at 1031-32 ("Although it appears highly improbable that the contract

20 could be performed within one year, we cannot say that the terms of the contract made

21 performance impossible within that period; therefore it is our opinion that this contract is

22 //

1    not void.")  Therefore, the court turns to the second basis for applying the statute of

2    frauds.[7]

3           The second reason Mr. Steadman's loan falls within the statute of frauds is that it

4    is an encumbrance on real property.  RCW 64.04.010; RCW 64.04.020; *Algaier v. CMG*

5    *Mort., Inc.*, No. 13-CV-0380-TOR, 2014 WL 3965180, at *7 (E.D. Wash. Aug. 13, 2014)

6    (finding that a loan secured by real property falls within the statute of frauds under

7    Washington law because it is an encumbrance on real property); *Turning Point Cmty.*

8    *Church of God in Christ*, 152 Wash. App. 1014, at *3-4 (same).  Although the doctrine of

9    part performance is applicable, Mr. Steadman's evidence of part performance is

10   insufficient to remove the alleged modification from the operation of the statute.

11          "Where specific performance of [an] agreement is sought, the contract must be

12   proven by evidence that is clear and unequivocal and which leaves no doubt as to the

13   terms, character, and existence of the contract."  *Berg*, 886 P.2d at 571.  Courts consider

14   three elements to determine if there has been part performance of the agreement so as to

15   remove it from the statute of frauds:  "(1) delivery and assumption of actual and

16   exclusive possession; (2) payment or tender of consideration; and (3) the making of

17   permanent, substantial and valuable improvements, referable to the contract."  *Id.*  The

18   burden is on the party asserting the part performance to show acts "unequivocally

19   *//*

20

21   _____

22   [7] Because, at the end of the day, the statute of frauds is applicable to the loan modification under both theories, the court does not address the interplay between the theories.

ORDER- 19

1    referring to, and resulting from, [an alleged] agreement." *Friedl v. Benson*, 609 P.2d 449,

2    455 (Wash. Ct. App. 1980).

3        Mr. Steadman's only evidence of part performance is that he made payments in

4    the modified amount to BoA for eight months after the contract modification allegedly

5    occurred, and BoA accepted those payments.  (Steadman Decl. at 3; Steadman Dep. at

6    116:11-16.)  However, the Washington Supreme court has held that, of the three factors,

7    "consideration alone is insufficient evidence of part performance to take [a contract] out

8    of the statute of frauds." *Berg*, 886 P.2d at 571.  More important, the court cannot say

9    that BoA's performance does not "leave no doubt as to the . . . existence of the contract."

10   *See id.*  BoA notified Mr. Steadman twice after he began making modified payments that

11   the payments were insufficient, and he was in danger of defaulting.  (Ford Decl. Ex. 2 at

12   78-88, 95-96; Steadman Dep. at 116:18-117:8,135:16-25.)  BoA also specified that, by

13   accepting lower payments, BoA did not waive its right to full payment.[8]  (Ford Decl. Ex.

14   2 at 87-88.)  Because the acts allegedly constituting part performance do not "point

15   unmistakably and exclusively to the existence of the claimed agreement," the statute of

16   frauds applies.  *See Miller v. McCamish*, 479 P.2d 919, 922 (Wash. 1971).

17       The final question, then, is whether Green Tree may assert the statute of frauds

18   defense in this action.  It is well-established that an "assignee steps into the shoes of the

19

20   [8] Mr. Steadman claims that BoA representatives told him to disregard the notices of default
     because his modification had been approved, and he was only receiving the notices because their system
     was behind in formally processing the approval.  (Steadman Dep. at 113:13-117:11; Steadman Decl. at 2-
21   3.)  However, these out-of-court statements are not admissible to prove the truth of the matter asserted.
     Fed. R. Evid. 801(c), 802.  Mr. Steadman has not established that any hearsay exception applies.
22   Therefore, Mr. Steadman cannot rely on these statements to show that his modification had in fact been
     approved.

ORDER- 20

1    assignor, and has all of the rights of the assignor." *Mut. of Enumclaw Ins. Co. v. USF*

2    *Ins. Co.*, 191 P.3d 866, 874-75 (Wash. 2008); *Fed. Fin. Co.*, 949 P.2d at 417 ("[A]n

3    assignee's rights are coextensive with those of the assignor at the time of assignment.").

4    By corollary, "an assignee takes subject to defenses assertible against the assignor." *Mut.*

5    *of Enumclaw Ins. Co.*, 191 P.3d at 875, n.10 (quoting *Lonsdale v. Chesterfield*, 662 P.2d

6    385, 389 (Wash. 1983)).  As such, Green Tree can only enforce the loan terms to the

7    same extent as BoA was able to at the time of the assignment.

8           The Washington Supreme Court has held that "[a] party who promises, implicitly

9    or explicitly, to make a memorandum of a contract in order to satisfy the statute of frauds,

10   and then breaks that promise, is estopped to interpose the statute as a defense to the

11   enforcement of the contract by another who relied on it to his detriment."  *Klinke v.*

12   *Famous Recipe Fried Chicken, Inc.*, 616 P.2d 644, 647 (Wash. 1980); *see also Lige*

13   *Dickson Co. v. Union Oil Co. of Calif.*, 635 P.2d 103, 105 (Wash. 1981) ([D]efendant's

14   failure to reduce the agreement with plaintiff to a writing, and plaintiff's reliance on such

15   promise, estopped defendant from asserting the statute of frauds as a defense.")  The

16   court concludes that a genuine question of material fact exists as to whether BoA

17   implicitly promised Mr. Steadman that it would sign the loan modification delivered by

18   Mr. Steadman, such that BoA would be estopped from asserting the statute of frauds as a

19   defense.  *See Klinke*, 616 P.2d at 647.

20          Specifically, for the same reasons as discussed in the previous section regarding

21   acceptance, a jury could reasonably find that Mr. Ngo's representations to Mr. Steadman

22   constitute an express or implied promise on behalf of BoA make a written memorandum

1    of the loan modification.  *See supra* § III.C.1; (Steadman Dep. at 105:1-106:20; 2d

2    Steadman Dep. 22:13-27:17; 28:7-29:8 (stating that he expected Mr. Ngo to sign the loan

3    modification agreement when he delivered it to him, and thought that he did sign it);

4    Steadman Decl. at 2 ("It was my understanding that Mr. Ngo signed the final

5    modification paperwork after he accepted it from me.").)  The subsequent continued

6    assurances by BoA representatives to Mr. Steadman that BoA was in the process of

7    finalizing his loan approval also support such a finding.[9]  (*See* Steadman Dep. at 113:13-

8    117:11; Steadman Decl. at 2-3).)  Moreover, a jury could reasonably find that Mr.

9    Steadman detrimentally relied on BoA's promise to sign the contract in that he continued

10   making modified payments to BoA and Green Tree for over a year, and also apparently

11   installed a new roof and painted his house.  (*See* Steadman Decl. at 3; Steadman Dep. at

12   116:11-16; Ford Ex. 4 at 192 (3/27/14 email from Mr. Steadman).)  Because there is a

13   genuine issue of material fact as to whether BoA—and by extension, Green Tree—can

14   assert the statute of frauds defense, summary judgment on Mr. Steadman's breach of

15   contract claim is inappropriate.  *See Celotex*, 477 U.S. at 323.

16   //

17

18   _____

19   [9] These out-of-court statements are admissible in this context because they are not offered to
     show the truth of the matter asserted (namely, that Mr. Steadman's modification had been approved).
     Rather, they are offered to show (1) that the statements occurred and (2) the effect the statements had on
     the listener, specifically, that Mr. Steadman could have detrimentally relied on the statements, regardless

20   of their truth.  As such, they are admissible.  *See H. Koch & Sons*, 578 F.2d at 1290-91; *L.A. News Serv.
     v. CBS Broad., Inc.*, 305 F.3d 924, 935 (9th Cir.) *opinion amended and superseded*, 313 F.3d 1093 (9th

21   Cir. 2002) ("Out-of-court declarations introduced to show the effect on the listener are not hearsay.")
     Accordingly, the court DENIES Green Tree's motion to strike Mr. Steadman's account of those
     statements (*see* Reply at 2).  For the same reasons, Mr. Ngo's alleged statements to Mr. Steadman

22   concerning the finalization of the contract are admissible.

**D.      Duty of Good Faith**

"A duty of good faith and fair dealing is implied in every contract." *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991); *see also Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014). This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance. *Badgett*, 807 P.2d at 360. As discussed previously, Green Tree's assertion that Mr. Steadman's claim for breach of the implied duty of good faith must fail because there is no "direct" contractual relationship between Green Tree and Mr. Steadman is incorrect. *See supra* § III.B; (Reply at 7.) The contractual rights and obligations to collect payments from Mr. Steadman and to service the loan have been assigned to Green Tree. (*See* Assignment.) As Mr. Steadman points out, Green Tree has an implied duty to exercise those rights and perform those obligations fairly and in good faith. *See Rekhter*, 323 P.3d at 1041. Therefore, the court denies Green Tree's motion for summary judgment on Mr. Steadman's claim for breach of the duty of good faith.

In doing so, the court reiterates that Green Tree is not liable under this claim for alleged breaches by BoA. In addition, the court notes that there is no "free-floating" duty of good faith. *Id.* Instead, "the duty to cooperate exists only in relation to performance of a specific contract term." *Id.* In other words, the duty of good faith "requires only that the parties perform in good faith the obligations imposed by their agreement." *Id.* Therefore, in order to ultimately prevail on this claim, Mr. Steadman must point to a specific contract term that Green Tree did not perform in good faith.

*//*

ORDER- 23

**E.     Negligence**

Green Tree argues that the economic loss rule bars Mr. Steadman's negligence claim. (Mot. at 13.)  "Historically, Washington applied the economic loss rule to bar a plaintiff from recovering tort damages when the defendant's duty to the plaintiff was governed by contract and the plaintiff suffered only economic damages. *Donatelli v. D.R. Strong Consulting Engineers, Inc.*, 312 P.3d 620, 623 (Wash. 2013). That rule "attempted to describe the dividing line between the law of torts and the law of contracts." *Id.*  In 2010, however, Washington Supreme Court, "concluded that the term 'economic loss rule' was a misnomer and renamed the rule the 'independent duty doctrine' to more accurately describe how [the] court determines whether one contracting party can seek tort remedies against another party to the contract." *Id.* (citing *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010).  Today, the "independent duty doctrine continues to 'maintain the boundary between torts and contract' in the place of the economic loss rule." *Id.* (quoting *Elcon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 969 (Wash. 2012)).  Accordingly, the court applies the independent duty rule, rather than the economic loss rule, to Mr. Steadman's claims.

Under the independent duty doctrine, "an injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Eastwood*, 241 P.3d at 1262.  "When no independent tort duty exists, tort does not provide a remedy." *Id.*  The Washington Supreme Court has limited the application of the independent duty doctrine to a "narrow class of cases" limited to "claims arising out of construction on real property and real property sales." *Donatelli*, 312 P.3d at 623-24.

1   Additionally, the Washington Supreme Court has prohibited lower state courts from

2   applying the independent duty doctrine to bar tort claims "unless and until" the

3   Washington Supreme Court decided that the doctrine applies to the particular tort claim

4   at issue. *Elcon*, 273 P.3d at 969.

5       Here, Mr. Steadman's negligence claim is predicated on allegations that Green

6   Tree inappropriately serviced his loan.  Mr. Steadman obtained the loan to purchase his

7   residence, and the loan is secured by his residence.   (*See* Not. Deed of Trust.)  Therefore,

8   this claim "arises out of" the purchase of real property.  *See Donatelli*, 312 P.3d at 623-

9   24.  The elements of a negligence claim are:  (1) the existence of a duty, (2) breach of

10  that duty, (3) resulting injury, and (4) proximate cause.  *Degel v. Majestic Mobile Manor,*

11  *Inc.*, 914 P.2d 728, 731 (Wash. 1996).  Whether the independent duty doctrine applies to

12  negligence claims depends on whether the plaintiff identifies an alleged duty of care

13  separate and distinct from the parties' contractual duties.  *See Donatelli*, 312 P.3d at 623-

14  24.

15      With respect to claims for negligence, the "existence of a duty is a question of law

16  and depends on mixed considerations of logic, common sense, justice, policy, and

17  precedent." *Snyder v. Med. Serv. Corp. of E. Wash.,* 35 P.3d 1158, 1162 (Wash. 2001).

18  The "existence of a duty may be predicated upon statutory provisions or on common law

19  principles." *Degel*, 914 P.2d at 731.

20      Here, Mr. Steadman advances two bases for finding that Green Tree owed him a

21  duty of care.  First, Mr. Steadman claims that Green Tree owed a duty to "properly

22  service [Mr. Steadman's] loans in congruence with any contracts that exist related to [his]

ORDER- 25

1   loan." (Resp. at 15.) Because this duty, by definition, is identical to Green Tree's

2   contractual duties, the independent duty doctrine bars a negligence claim predicated on

3   this duty. *See Eastwood*, 241 P.3d at 1262

4        Second, Mr. Steadman claims that Green Tree owed a duty to "conduct a

5   reasonable and fair investigation in to [*sic*] the servicing history before taking over

6   servicing of [Mr. Steadman's] loan and whenever any disputes arise involving the loan's

7   servicing." (Resp. at 15.) Mr. Steadman does not identify any statutory provisions or

8   common law principles, let alone any precedent, supporting his position. (*See id.*); *see*

9   *also Degel*, 914 P.2d at 731. Neither does he identify how the considerations of logic,

10  common sense, justice, and policy militate in favor of his position. *See Snyder*, 35 P.3d

11  at 1162. Mr. Steadman's only argument is that it would be "unreasonable" if Green Tree

12  was not required to honor contracts formed between Mr. Steadman and prior services.

13  (Resp. at 15.) That argument, however, does not address whether Green Tree owes a

14  duty independent of those contracts. Faced with a vacuum of authority, the court is

15  unprepared and unwilling to rule that such a duty existed as a matter of law.[10] Therefore,

16  because Mr. Steadman is unable to establish the existence of a duty of care, let alone a

17  //

18  _____

19      [10] The determination of the existence of an alleged duty of care for the purposes of a negligence
    claim is similar, if not identical, to the determination of the source of an alleged duty of care for the
20  purposes of the independent duty doctrine. *See Eastwood*, 241 P.3d at 1262 ("Where this court has stated
    that the economic loss rule applies, what we have meant is that considerations of common sense, justice,
    policy, and precedent in a particular set of circumstances led us to the legal conclusion that the defendant
21  did not owe a duty."). Therefore, in the alternative, and regardless of whether the independent duty
    doctrine applies to Mr. Steadman's negligence claim, the court finds that Mr. Steadman's claim fails for
    an inability to establish a duty of care owed by Green Tree to Mr. Steadman.

22

1  duty of care that is independent from Green Tree's contractual duties, summary judgment

2  on Mr. Steadman's negligence claim is appropriate.

3  **F.    CPA**

4          To a establish a CPA claim, a plaintiff must show:  (1) an unfair or deceptive trade

5  practice; (2) that occurs in trade or commerce; (3) an impact on the public interest; (4)

6  injury to the plaintiff in his or her business or property; and (5) a causal link between the

7  unfair or deceptive act and the injury suffered.  *Hangman Ridge Training Stables, Inc. v.*

8  *Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986).  Green Tree argues first that Mr.

9  Steadman cannot show an unfair or deceptive trade practice, and second that Mr.

10  Steadman cannot show damages caused by Green Tree's actions.

11          To begin, either unfair *or* deceptive conduct can form the basis for a CPA action.

12  *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).  To base a claim on

13  deceptive action, a "plaintiff need not show the act in question was intended to deceive,

14  only that it had the capacity to deceive a substantial portion of the public." *Panag v.*

15  *Farmers Ins. Co. of Wash.*, 204 P.3d 885, 899 (Wash. 2009).  Although the Washington

16  Supreme Court has not provided an explicit definition for "unfair acts," *Klem*, 295 P.3d at

17  1187, it has held that "an act is unfair if it . . . is unethical, oppressive, or unscrupulous,"

18  *id.* at 1186.  One federal interpretation, to which Washington courts interpreting the CPA

19  may look for guidance, states that a "practice is unfair if it causes or is likely to cause

20  substantial injury to consumers which is not reasonably avoidable by consumers

21  themselves and is not outweighed by countervailing benefits."  *Id.*

22  *//*

1    Mr. Steadman contends that Green Tree's initiation of foreclosure proceedings

2  was deceptive because it misrepresented that Mr. Steadman had defaulted on his loan

3  payments.  (Resp. at 18.)  Mr. Steadman also contends that Green Tree's failure to help

4  him finalize and process a loan modification to which Mr. Steadman's previous servicer

5  had agreed was unscrupulous.  (Resp. at 19.)  Because the CPA is to "be liberally

6  construed that its beneficial purposes may be served," RCW 19.86.920, the court

7  concludes that Mr. Steadman's allegations adequately support a finding of a deceptive or

8  unfair trade practice.[11]

9    Next, the court finds that Mr. Steadman has adequately raised a material issue of

10  fact regarding damages.  Under the CPA, "the injury requirement is met upon proof the

11  plaintiff's property interest or money is diminished because of the unlawful conduct.

12  *Panag*, 204 P.3d at 899.  Additionally, "plaintiff must establish that, but for the

13  defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."

14  *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22 (Wash.

15  2007).  Personal injuries such as "mental distress, embarrassment, and inconvenience are

16  not recoverable under the CPA."  *Panag*, 204 P.3d at 899.

17  //

18

19    [11] Ordinarily, whether undisputed conduct is unfair or deceptive is a question of law, not a
20  question of fact.  *Lyons v. U.S. Bank Nat. Ass'n*, 336 P.3d 1142, 1148 (Wash. 2014).  However, where the
    allegedly deceptive conduct is disputed, the material questions of fact must be resolved by a factfinder.
    *Id.*  Here, Green Tree disputes Mr. Steadman's allegations.  Therefore, whether GreenTree's conduct was
21  unfair or deceptive is a question for the trier of fact.  *See id.*; *see also* 6A Wash. Prac., Wash. Pattern Jury
    Instr. Civ. WPI 310.08 (6th ed.) (setting forth the definition of an unfair or deceptive act or practice for
22  the jury's determination).

ORDER- 28

1    Here, Mr. Steadman testifies that he has been charged default fees and foreclosure

2  fees as a result of Green Tree's allegedly invalid foreclosure on his property that he

3  would not have been charged otherwise.  (*See* Steadman Decl. at 3.)  "The injury element

4  will be met if the consumer's property interest or money is diminished because of the

5  unlawful conduct even if the expenses caused by the statutory violation are minimal."

6  *Mason v. Mort. Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990).  Because Mr. Steadman

7  provides evidence that his money has been diminished because of Green Tree's allegedly

8  unlawful conduct, there is a question of fact regarding this element.  Therefore, summary

9  judgment on Mr. Steadman's CPA claim is inappropriate. [12]

10 **G.    MLSA**

11   Plaintiff concedes that his claim under the MLSA is preempted by the federal Real

12 Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., because  Green

13 Tree issued a timely, RESPA-compliant notice to Plaintiff when Green Tree began

14 servicing Plaintiff's loan.  (*See* Resp. at 19); *see also* 12 U.S.C. ¶ 2605(c)(1)(A); 12

15 C.F.R. 1024.33(d).  Therefore, the court grants summary judgment on Plaintiff's MLSA

16 claim.

17 //

18 //

19 _____

20   [12] In support of his CPA claim, Mr. Steadman attaches as evidence six consumer complaints filed
   with the Washington State Attorney General against Green Tree for failing to credit loan modifications
21 entered into prior to assignment.  (*See* Box Decl. Ex. 3.)  Green Tree moves to strike this evidence as
   unauthenticated, hearsay, and impermissible character evidence.  (*See* Reply at 2.)  Because the court
22 does not rely on that evidence is deciding this motion, the court DENIES Green Tree's motion to strike as
   moot.

1

### IV.     CONCLUSION

2        For the foregoing reasons, the court GRANTS in part and DENIES in part

3   Defendant's motion for summary judgment (Dkt. # 24).

4        Dated this 5th day of May, 2015.

5

6

7        _____

8        JAMES L. ROBART
         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 30